Rolland T. Olson and Lucille R. Olson v. Commissioner.
Olson v. Commissioner
Docket No. 4790-62.
United States Tax Court
T.C. Memo 1964-325; 1964 Tax Ct. Memo LEXIS 16; 23 T.C.M. (CCH) 2008; T.C.M. (RIA) 64325; December 17, 1964
Rolland T. Olson, pro se, 5631 Manor Lane, Chicago, Ill. Helen A. Viney, for the respondent. PIERCE Memorandum Findings of Fact and Opinion PIERCE, Judge: The Commissioner determined a deficiency in the income tax of the petitioners for the calendar year 1960 in the amount of $304.51. The sole issue is whether the petitioners are entitled to deduct for "medical care," as defined in section 213(e) of the 1954 Code and provisions of the Income Tax Regulations promulgated thereunder, amounts expended for tuition and transportation for a mentally retarded dependent child, in obtaining special individual training for the primary purpose of mitigating his mental deficiency and enabling him to acquire an ability to learn, after he had been *17 repeatedly excluded from both regular and special public schools by reason of his mental condition. Findings of Fact The petitioners are husband and wife, residing in Chicago, Illinois. They filed a joint income tax return for the taxable year 1960 with the district director of internal revenue at Chicago. The husband, Rolland T. Olson, is hereinafter referred to as the "petitioner." Petitioner and his wife were the parents of a mentally retarded dependent son, named Theodore, who at the beginning of the taxable year involved was 8 years of age. The boy was abnormal, both mentally and physically, from the time of his birth. His eyes were double-crossed, so that from an early age it was necessary for him to use thick glasses. He walked with a peculiar gait. His speech was somewhat slurred. Mentally, he was about 2 years behind normal children of the same age; and he manifested a short attention span ranging from 1 minute to 2 or 3 minutes at a time, which prevented him from either sitting quiet or concentrating unless given close individual attention. Other children regarded him to be odd and teased him; and he then would strike back or take other violent action against them. *18 Extensive efforts of his parents to mitigate this condition through consultations with doctors and psychologists were unsuccessful. In the fall of 1958 when the boy was about 7 years of age, he was enrolled in the neighborhood grammar school, known as the Penoyer School; but after a few months, he was excluded by the school authorities because of his mentally retarded condition and his uncontrollable conduct that prevented him from getting along with the teacher and other children. He then was enrolled in a school in Des Plaines, Illinois, which had special facilities for training mentally handicapped children; but after a few months, that school refused to permit him to continue. In 1959, following temporary readmission to the Penoyer School on a trial basis, he again was excluded; and thereupon the Director of Special Education for Leydon Township arranged to have the boy entered in another public school, named Westdale, which also was especially equipped to handle mentally handicapped children. But in November of that same year, he was excluded from this school also. The reasons for all these exclusions from both regular and specially equipped schools, as determined from psychological *19 examinations made by medical and school authorities were: That the boy had low mental ability and a short attention span, due to brain damage, which handicapped him in his ability to learn; that he also suffered from super-hyperactivity which prevented him from controlling his personal conduct; that his inability to control himself was due solely to a congenital mental deficiency, and not to any delinquency resulting from environment; and that he needed close individual attention and training, which the above-mentioned schools were not sufficiently equipped to provide. After the boy's exclusion from all of said schools, the petitioner was faced with a desperate situation. The only other public institution in the area which was specially equipped to handle a child of such mental condition was the Healy School; but it was learned that this school was already overcrowded and had no vacancy. The school authorities recognized that there was a calculated risk both to the child and to the community, in excluding the boy from their school programs and permitting him to go on the streets unattended; but they were unable to provide any alternative. In December 1959, the petitioner appealed *20 for assistance to Kenneth W. Chittum, who was the Director of the Park Ridge Military Academy located in the area. Chittum had extensive experience in the training of young boys; and his school was well equipped for that purpose, although its practice was not to enroll any mentally handicapped children. However after Chittum was informed of the problem at hand, he decided that it would be a personal challenge for him to train petitioner's son, so that he might acquire ability to learn and become better adjusted for normal education and normal living. He therefore accepted the boy for such training at his school, on a special day-to-day trial basis. The method of training or therapy which Chittum thereafter applied during and after the taxable year here involved, was to work personally with the boy on a person-to-person basis, although at times a few other children were permitted to participate in his procedures. Because of the boy's short attention span, Chittum found it necessary to constantly change the subjects through which he sought to gain the child's interest or attention. For example, one of his therapy tools was the use of numbers and simple arithmetic problems; and then *21 when the child lost interest in these, which might be after only a minute or two, Chittum would shift to another subject and again attempt to stimulate interest. Such procedures soon began to evidence progress. Gradually the boy's attention span began to increase, and he showed indication of greater ability to learn. After such special training had continued for more than 2 years, arrangements were made to enroll the boy again in the Penoyer public school on a trial basis; but this experiment failed. After only a few weeks the boy was again excluded from that school; and Chittum then resumed the special individual training. During the taxable year involved, petitioner paid to Chittum's school the amount of $941.70 for the special training - which was more than the school's regular tuition; and he also expended $328.30 for the child's necessary transportation to and from said school. There is no dispute that these amounts actually were paid; and that petitioner received no reimbursement for the same, either from public funds or any other source. In the joint income tax return which petitioner and his wife filed for the year 1960, they claimed a deduction for the above amounts, as *22 part of their other medical expenses. The respondent disallowed such deduction. Opinion Section 213 of the 1954 Code provides a deduction for expenses paid during the taxable year, not compensated for by insurance or otherwise, for "medical care" of a taxpayer's dependent. And in paragraph (e) of said section, the term "medical care" is defined to include amounts paid - (A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body * * *, or (B) for transportation primarily for and essential to medical care referred to in subparagraph (A). Also section 1.213-1(e)-(1)(v)(a) of the Income Tax Regulations provides in pertinent part as follows: While ordinary education is not medical care, the cost of medical care includes the cost of attending a special school for a mentally or physically handicapped individual, if his condition is such that the resources of the institution for alleviating such mental or physical handicap are a principal reason for his presence there. * * * Thus, the cost of medical care includes the cost of attending a special school designed to compensate for or overcome *23 a physical handicap, in order to qualify the individual for future normal education or for normal living, such as a school for the teaching of braille or lip reading. Similarly, the cost of * * * treatment and training, of a mentally retarded or physically handicapped individual at an institution is within the meaning of the term "medical care." After considering and weighing all the evidence in the instant case - including the nonconflicting testimony of the boy's father, medical authorities, school officials, and Kenneth W. Chittum who administered the special individual training involved - we are convinced beyond any reasonable doubt, and we here find and hold, that petitioner's son suffered from a mental deficiency and handicap which prevented him from pursuing normal education and normal living; that the principal reason and primary purpose of the special training here involved was not ordinary education, but rather remedial training and therapy designed to overcome his handicap and stimulate his ability to learn, so that he might better undertake normal future education and normal living; and that the undisputed amounts paid in furtherance of such special training and transportation *24 essential thereto, qualify for deduction under the above-quoted statutes and regulations. We decide the issue in favor of the petitioners. Decision will be entered for the petitioners. *
Footnotes
*. By official order of the Tax Court, dated February 10, 1965, and signed by Judge Pierce, the above decision line was substituted in place of "Decision will be entered under Rule 50".↩